

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2018 MAY 31

WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FELONY**

**INDICTMENT FOR CONSPIRACY,
SMUGGLING, AND VIOLATION OF THE LACEY ACT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-118 |
| v. | * | SECTION: SECT. F  MAG. 1 |
| WILLIAM MCGINNESS | * | VIOLATIONS: 18 U.S.C. § 371 |
| PAUL TALLMAN | | 18 U.S.C. § 554 |
| ALEX MADRIAGA | * | 16 U.S.C. § 3372(d)(2) |
| WAYNE ANDREWS | | 16 U.S.C. § 3373(d)(3)(A) |
| RENE RIZAL | * | 18 U.S.C. § 2 |

\*      \*      \*

The Grand Jury charges that:

### COUNT 1

**(Conspiracy to Violate 18 U.S.C. § 554 and
16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A))**

A.   **AT ALL TIMES MATERIAL HEREIN:**

1.   Defendant **WILLIAM MCGINNESS** was a resident of Buena Park, California, doing business as Bill's Birds.

2.   Defendant **PAUL TALLMAN** was a resident of Destrehan, Louisiana, and was President of Aerotyme, Inc., a freight forwarding company located in Kenner, Louisiana.

Fee_____
Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

3. Defendant **ALEX MADRIAGA,** Doctor of Veterinary Medicine, was a resident of Buena Park, California, and was licensed to practice veterinary medicine in California.

4. Defendant **WAYNE ANDREWS** was a resident of Royal Oaks, California, where he was in the business of buying, selling, and breeding birds, including parrots and macaws.

5. Defendant **RENE RIZAL** was a resident of Cerritos, California, where he was in the business of buying, selling, and breeding birds, including parrots and macaws.

6. Parrots and macaws were species of birds that are members of the order Psittaciformes.

7. Pursuant to Article 33 of the Statute for Prevention and Control of Infectious Disease, from January 25, 2015, to February 22, 2016, Taiwan listed California as a disease-infested zone because of the occurrence of highly pathogenic avian influenza and imposed a moratorium on imports of all birds from California.

**B.    RELEVANT STATUTES AND REGULATIONS:**

8. The Lacey Act, Title 16 U.S.C. §§ 3371-3378, made it unlawful for a person to "make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be (1) imported, exported, transported, sold, or received from any foreign country; or (2) transported in interstate or foreign commerce." 16 U.S.C. § 3372(d).

9. The United States and approximately 182 countries, are signatories to a multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. 8249 (commonly referred to as "CITES" or the "Convention"). CITES provides a mechanism for regulating international trade in species whose continued survival is threatened by such trade. Species are listed on "appendices," based on the level of protection necessary to protect the species.

10. Wildlife species in danger of extinction and which are, or may be, affected by trade are listed on Appendix I of CITES. CITES only allows trade in Appendix I species for scientific and research purposes, and only if a valid foreign export permit issued by the specimen's country of origin (or a valid "foreign re-export certificate" issued by the country of re-export), as well as a valid "import permit" from the destination country, are obtained prior to shipping any such wildlife from one country to another.

11. Birds are classified as Appendix I, even hybrids, as long as at least one specimen in the recent lineage of the bird (four generations by direct line of descent) is listed in Appendix I. 50 CFR § 23.43.

12. Several species of macaws, including but not limited to the Scarlet macaw (*Ara macao*), the Military macaw (*Ara militaris*), and the Great Green macaw, (*A. ambiguus*) have been listed on Appendix I of CITES.

13. Species listed on Appendix II of CITES are those that may become threatened with extinction unless trade is strictly regulated. Trade in Appendix II species is subject to strict regulation although trade for commercial purposes is allowed. Generally, for such trade, the exporting country must issue a foreign export permit (or valid foreign re-export permit) after determining that: (a) "such export will not be detrimental to the survival of that species, (b) the specimen was not obtained in contravention of the laws of [the exporting Country] for the protection of fauna and flora; and (c) any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment." CITES, Article IV.

14. The Harlequin macaw (*Chloropterus x Ararauna*) is a CITES Appendix II species because both of its parents, the Red and Green macaw (*Ara Chloropterus*) and the Blue and Gold macaw (*Ara Ararauna*) are CITES Appendix II species. 50 C.F.R. § 23.43.

15. CITES is implemented in the United States by the Endangered Species Act of 1973 (ESA). 16 U.S.C. §§ 1537a, 1540(f). The ESA states that "[i]t is unlawful for any person . . . to engage in any trade in any specimens contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES]," or attempt to do so. 16 U.S.C. §§ 1538(c)(1), 1538(g). The requirements of CITES are also implemented through federal regulations, which require a CITES export permit or re-export certificate issued by the United States prior to the exportation of any CITES protected wildlife. 50 CFR §§ 23.13, 23.20, 23.35, 23.36, 23.37.

16. In addition to the requirements of CITES, regulations promulgated to implement the ESA generally requires that persons exporting wildlife from the United States, complete and sign a Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) ("the Export Declaration Form") prior to the importation or exportation of any wildlife. 50 CFR §§ 14.61, 14.63. Among other information, the form must accurately list the name and the address of the shipper and the CITES permit number authorizing the exportation of any CITES-protected species. The exporter must certify that the information is true and correct to the best of their belief and knowledge. The ESA makes it unlawful for any person exporting wildlife to fail to file any declaration or record, such as Form 3-177 and relevant CITES documents necessary under the ESA or CITES. 16 U.S.C. § 1538(e).

C. **THE CONSPIRACY**:

17. Beginning on a date unknown, but no later than June 2, 2015, and continuing until on or about July 22, 2015, in the Eastern District of Louisiana, and elsewhere, defendants **WILLIAM MCGINNESS, PAUL TALLMAN, ALEX MADRIAGA, WAYNE ANDREWS** and **RENE RIZAL,** and other persons both known and unknown to the Grand Jury, did knowingly conspire, combine, confederate, and agree among themselves to:

    a.    knowingly facilitate the transportation, concealment or sale of merchandise, specifically, birds, knowing the same to be intended for exportation contrary to any law or regulation of the United States, namely the Endangered Species Act, 16 U.S.C. §§ 1538(c) and (e), all in violation of Title 18, United States Code, Section 554.

    b.    knowingly make and submit and cause to be made and submitted false records and labels for, and false identifications of, wildlife, namely birds, that had been or were intended to be transported in foreign commerce, specifically export, in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A).

**D.**    **MANNER AND MEANS OF THE CONSPIRACY:**

18.    It was part of the conspiracy that **WILLIAM MCGINNESS** created and submitted, and caused others to submit, false documents about the origin and health of CITES- protected birds to the United States Fish and Wildlife Service and others.

19.    It was further part of the conspiracy that **WILLIAM MCGINNESS** transported CITES protected birds from California to Louisiana, for export to Taiwan.

20.    It was further part of the conspiracy that **PAUL TALLMAN** transported CITES protected birds from Louisiana to Houston, for export to Taiwan.

**E.**    **OVERT ACTS:**

21.    In furtherance of the conspiracy and in order to achieve the unlawful objectives thereof, **WILLIAM MCGINNESS, PAUL TALLMAN, ALEX MADRIAGA, RENE RIZAL** and **WAYNE ANDREWS** and their co-conspirators, both known and unknown, on or about the dates specified below, committed, or caused to be committed, the following transactions and associated

activities, which are representative examples of overt acts in the Eastern District of Louisiana and elsewhere:

    a. OVERT ACT ONE: On or about January 31, 2015, at the request of **WILLIAM MCGINNESS, WAYNE ANDREWS** signed a breeder's certificate for a CITES permit application that stated that he sold all birds listed on the breeder's certificate to **WILLIAM MCGINNESS** and that he raised and hatched all birds listed on the breeder's certificate, when in fact he had not.

    b. OVERT ACT TWO: On or about February 5, 2015, at the request of **WILLIAM MCGINNESS, RENE RIZAL** signed a breeder's certificate for a CITES export permit application that stated that he sold all birds listed on the breeder's certificate to **WILLIAM MCGINNESS** and that he raised and hatched all birds listed on the breeder's certificate, when in fact he had not.

    c. OVERT ACT THREE: On or about February 11, 2015, **WILLIAM MCGINNESS** submitted a CITES export permit application by mail to the United States Fish and Wildlife Service in Falls Church, Virginia, that falsely listed the address of Bill's Birds as 78490 Church Street, Falsom, Louisiana, 70437, and in support of the permit, he included the false breeder's certificates he obtained from **WAYNE ANDREWS** and **RENE RIZAL**.

    d. OVERT ACT FOUR: On June 1, 2015, **WILLIAM MCGINNESS** sent **PAUL TALLMAN**, a freight forwarder, an email titled "Bill's Birds freight – msy/hou/tpe" in which he asked about "getting booked on the 16th of MSY" and giving **PAUL TALLMAN** the number, dimensions, and total weight of the boxes to be exported to Taiwan.

e. OVERT ACT FIVE: On June 3, 2015, **PAUL TALLMAN** sent **WILLIAM MCGINNESS** an email in which he told **MCGINNESS** he needed a power of attorney and **MCGINNESS**' United States Fish and Wildlife Service export license. He also asked that MCGINNESS provide him with his company address and employer identification number.

f. OVERT ACT SIX: On June 3, 2015, **WILLIAM MCGINNESS** sent an email to **PAUL TALLMAN** in which he stated that his "EIN is out of ca," and listed the address as Bill's Birds, 7641 Haldor Place, Buena Park, California, 90620, but stated "New Orleans office address all the shipping paperwork (airbill ect) needs to say: Bills Birds, 78490 Church Road, Folsom, la, 70437..."

g. OVERT ACT SEVEN: On June 4, 2015, **PAUL TALLMAN** caused an employee of Aerotyme, Inc. to email **WILLIAM MCGINNESS** asking if his company was registered in Louisiana.

h. OVERT ACT EIGHT: On June 4, 2015, **WILLIAM MCGINNESS** emailed an employee of Aerotyme, Inc., informing her that his business was not registered in Louisiana and asking her for help if he needed to register in Louisiana.

i. OVERT ACT NINE: On June 4, 2015, **PAUL TALLMAN** caused an Aerotyme, Inc. employee to email **WILLIAM MCGINNESS** in which she stated "No problem. Here is a link http://www.sos.la.gov/Pages/default.aspx. Can you send me documents out of Louisiana on any previous shipments?"

j. OVERT ACT TEN: On July 12, 2015, at the request of **WILLIAM MCGINNESS, ALEX MADRIAGA** signed a Department of Agriculture Veterinary Health Certificate falsely certifying, among other things, that the birds

had been in quarantine for 21 days and that the health certificate originated in Louisiana.

k. OVERT ACT ELEVEN: On or about June 4, 2015, **PAUL TALLMAN** caused an Aerotyme Inc. employee to collect documents and information about the birds that were to be exported to Taiwan, including CITES Export Permit number US59064B/9, from **WILLIAM MCGINNESS.**

l. OVERT ACT TWELVE: On or about June 4, 2015, through June 20, 2015, **PAUL TALLMAN** caused an Aerotyme Inc. employee to prepare the Export Declaration Form for **WILLIAM MCGINNESS'** shipment of 90 CITES-protected birds, falsely listing **MCGINNESS'** business address as 78490 Church Road, Falsom, Louisiana, 70437.

m. OVERT ACT THIRTEEN: On July 14, 2015, **PAUL TALLMAN** submitted or caused an employee of Aerotyme, Inc. to submit a 48-hour notice to the United States Fish and Wildlife Service, which provided notice that Aerotyme, Inc. would be exporting a shipment of 90 exotic birds from the Port of New Orleans to Taiwan, on behalf of Bill's Birds.

n. OVERT ACT FOURTEEN: On or about July 17, 2015, **WILLIAM MCGINNESS** called **PAUL TALLMAN** to inform him that he was leaving his residence in California and traveling to New Orleans with the birds.

o. OVERT ACT FIFTEEN: On or about July 21, 2015, **PAUL TALLMAN** submitted, from Aerotyme, Inc., to the United States Fish and Wildlife Service in Kenner, Louisiana, the Export Declaration Form containing a false Louisiana address for **WILLIAM MCGINNESS.**

p. OVERT ACT SIXTEEN: On or about July 21, 2015, **WILLIAM MCGINNESS** arrived at Aerotyme, Inc. with the birds.

q. OVERT ACT SEVENTEEN: On or about July 21, 2015, while a United States Fish and Wildlife Service agent was at Aerotyme, Inc. inspecting the birds prior to export, **WILLIAM MCGINNESS** told the agent that the birds had been in quarantine in Louisiana for 21 days, when in fact he knew they had not.

r. OVERT ACT EIGHTEEN: On or about July 21, 2015, **PAUL TALLMAN** caused the birds and the export paperwork, including the Export Declaration Form and CITES permit number US509064B/9, issued to **WILLIAM MCGINNESS** by the United States Fish and Wildlife Service, to be transported by truck from the Eastern District of Louisiana to the China Airlines terminal at the George Bush International Airport in Houston, Texas, for export to Taiwan.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

### (Smuggling Goods from the United States, 18 U.S.C. § 554)

Paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

On or about July 21, 2015, within the Eastern District of Louisiana, and elsewhere, **WILLIAM MCGINNESS** and **PAUL TALLMAN** fraudulently and knowingly exported and sent, and attempted to export and send from the United States merchandise, articles, and objects, namely birds, contrary to law and regulation of the United States, specifically contrary the Endangered Species Act, 16 U.S.C. §1538(c) and (e), all in violation of Title 18, United States Code, Sections 554 and 2.

9

## COUNT 3

**(Violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A))**

Paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

On or about July 21, 2015, in the Eastern District of Louisiana, **WILLIAM MCGINNESS** and **PAUL TALLMAN** knowingly submitted and caused to be submitted, a false record of wildlife that was intended to be transported in foreign commerce, specifically exported, that is, **PAUL TALLMAN** made and submitted to United States Fish and Wildlife agents, an Export Declaration Form for the export of birds which falsely listed the exporter's, **WILLIAM MCGINNESS'**, address as 78490 Church Road, Falsom, Louisiana, 70437, when in truth in fact, as the defendants then knew, **MCGINNESS'** correct address was 7641 Haldor Place, Buena Park, California, 90620, all in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A) and Title 18, United States Code, Section 2.

## COUNT 4

**(Violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A))**

Paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

On or about July 21, 2015, in the Eastern District of Louisiana, **WILLIAM MCGINNESS** knowingly caused to be submitted a false record of wildlife that was intended to be transported in foreign commerce, specifically exported, that is **WILLIAM MCGINNESS** caused to be submitted to United States Fish and Wildlife agents, CITES Export Permit number US59064B/9, which falsely listed at least one CITES Appendix I macaw as an Appendix II Harlequin macaw (*Ara Chloropterus x Ararauna*), all in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A) and Title 18, United States Code, Section 2.

## COUNT 5

### (Violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A))

Paragraphs 1 through 16 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

On or about July 21, 2015, in the Eastern District of Louisiana, **WILLIAM MCGINNESS** knowingly caused to be submitted a false label for wildlife that was intended to be transported in foreign commerce, specifically exported, in that he placed at least one false label on a shipping crate containing wildlife being exported, that is a CITES-protected bird, identifying the bird as an Appendix II species, when in truth in fact, as the defendant then knew, the bird was an Appendix I species, all in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A).

### NOTICE OF FORFEITURE

1. The allegations of Counts 1, 3 through 5 of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 16, United States Code, Section 3374, made applicable through Title 28, United States Code, Section 2461(c).

2. As a result of the offenses alleged in Counts 1, 3 through 5, the defendant, **WILLIAM MCGINNESS**, shall forfeit to the United States pursuant to Title 16, United States Code, Section 3374(a)(1), made applicable through Title 28, United States Code, Section 2461(c), any and all fish or wildlife involved in the violations.

3. Additionally, as a result of the offenses alleged in Counts 1, 3 through 5, the defendant, **WILLIAM MCGINNESS**, shall forfeit pursuant to Title 16, United States Code, Section 3374(a)(2), all vessels, vehicles, aircraft, and other equipment used to facilitate the violations, including but not limited to:

a. A white van, bearing Vehicle Identification Number: 1GAHG39R6Y1214054, registered to **WILLIAM MCGINNESS**.

b. All birds seized (and not deceased) on July 22, 2015 by United States Fish and Wildlife agents at China Airlines at the George Bush International Airport in Houston, Texas. These birds include:

>1 military macaw hybrid;
>
>2 Scarlet macaw hybrids;
>
>7 yellow-crowned parrots;
>
>1 yellow-naped parrot.

All in violation of Title 16, United States Code, Section 3374, made applicable through Title 28, United States Code, Section 2461(c).

A TRUE BILL:

[signature redacted]

DUANE A. EVANS
UNITED STATES ATTORNEY

[signature]

GREGORY M. KENNEDY
Assistant United States Attorney
Louisiana Bar Roll Number 20896

[signature]

MARY DEE CARRAWAY
Trial Attorney
Environmental Crimes Section
United States Department of Justice

New Orleans, Louisiana
May 31, 2018

No._____

# UNITED STATES DISTRICT COURT

\_\_\_\_Eastern\_\_\_\_ *District of* \_\_\_\_Louisiana\_\_\_\_
_____Criminal_____ *Division*

## THE UNITED STATES OF AMERICA

vs.

**WILLIAM MCGINNESS**
**PAUL TALLMAN**
**ALEX MADRIAGA**
**WAYNE ANDREWS**
**RENE RIZAL**

### INDICTMENT FOR CONSPIRACY, SMUGGLING, AND VIOLATION OF THE LACEY ACT

VIOLATIONS:
- 18 U.S.C. § 371
- 18 U.S.C. § 554
- 16 U.S.C. § 3372(d)(2)
- 16 U.S.C. § 3373(d)(3)(A)
- 8 U.S.C. § 2

*A true bi[ll]*

*Filed in open court this* _____ *day of* _____
_____ *A.D. 2018.*

_____
*Clerk*

*Bail, $* _____

*Mary Dee Carraway* (signature)
**MARY DEE CARRAWAY**
**Trial Attorney/DOJ/ENRD**